UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WILSON THEODORE,
LASHANDA THEODORE,
*on behalf of themselves and others
similarly situated,*

        **Plaintiffs,**

v.                                                                                          Civil Action No. _____

**TRANS UNION, LLC,**                                                    **JURY TRIAL DEMANDED**

**SERVE:**   Corporation Service Company, Registered Agent
            100 Shockoe Slip, 2nd floor
            Richmond, VA  23219

        **Defendant.**

## CLASS ACTION COMPLAINT

COME NOW the Plaintiffs, Wilson Theodore and Lashanda Theodore, (together, the "Plaintiffs"), *individually and on behalf of others similarly situated,* by Counsel, hereby file this action against Defendant Trans Union LLC ("Defendant" or "Trans Union").

## PRELIMINARY STATEMENT

1. In this Court and Circuit, "CRAs [Consumer reporting agencies] cannot just report verbatim whatever is provided them by their sources; they must have procedures in place to ensure that the information from those sources is accurate." National Consumer Law Center, FAIR CREDIT REPORTING (10th ed. 2022), updated at www.nclc.org/library, §4.4.6.4.1 *CRAs must have procedures to monitor and oversee furnisher*s.

2. Here, Defendant, a Big-3 CRA blindly accepted the reporting of loans fraudulently created by now bankrupt Power Home Solar, LLC d/b/a Pink Energy ("Pink Energy") and the

closely connected lending partners that were used as the "furnishers" of credit reporting information verbatim rereported by Trans Union in the credit reports of the Plaintiffs and many other consumers like them,

3. The loans were created as a way to sell – usually door-to-door or by phone – supposed solar panel systems. The systems were not genuine and are now the subject of a bankruptcy filed on October 7, 2022, in the Western District of North Carolina. The loans as well were grossly inflated and not such to conform with ordinary consumer credit instruments more typically reported through Trans Union.

4. Numerous Attorneys General – including Virginia's own - sent letters to Pink Solar's lending partners demanding that those creditors who work with Pink Energy as its financing side, including Sunlight Financial LLC ("Sunlight"), Dividend Solar Finance LLC, GoodLeap, LLC, and Solar Mosaic, Inc. (collectively, the "Pink Energy Partners"), cease asserting those victimized consumers' fraudulent payment obligations.

5. Trans Union was informed of all of this, and discovery will show it bever once looked into it. Nevertheless, Trans Union has allowed Sunlight to continue to report these debts on Plaintiffs' and putative class members' credit reports in order to coerce repayment of these Pink Energy based debts.

6. Section 1681e(b) of the FCRA requires consumer reporting agencies to use "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

7. Further, §1681c(f) required at a minimum that the CRA include a notation that an account is disputed. Trans Union violated each of these provisions as well as §1681i(a) which required it to conduct a substantive investigation when it received the Plaintiffs' disputes.

8. This is a class action for statutory, actual, and punitive damages, costs and attorney fees, brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"). Defendant violated § 1681e(b) on a systemic basis by ignoring inconsistent information it received from consumer disputes, Attorneys General correspondence and public statements, and widespread press coverage of the Pink Energy accounts and deferred instead to contradictory and unverified information reported by automated transmission from its paying subscribers, the Pink Energy partners. Trans Union also violated § 1681c(f) when it failed to delete or permanently block the reporting of the disputed Pink Energy Partner accounts when it knew they were disputed. Plaintiffs Theodore also brings their own individual claims for actual, statutory and punitive damages for Trans Union's failure to properly investigate their disputes, as required by 15 U.S.C. § 1681i(a).

## JURISDICTION AND VENUE

11. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681p, and 15 U.S.C. § 1692k(d).

12. Venue is proper in this District and Division because Plaintiffs are residents of this District and Division, the violations described in this Complaint occurred in this District, a substantial part of the events giving rise to Plaintiffs' claims occurred in this Division, and Trans Union transacts business within this District and Division.

## PARTIES

13. Plaintiffs, Wilson Theodore and Lashanda Theodore, are natural persons and "consumer[s]" as defined by § 1681a(c).

14. Defendant Trans Union LLC is a limited liability company headquartered in Illinois and does business in the Commonwealth Virginia through its registered agent.

15. Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

## FACTUAL ALLEGATIONS

A. **The Statutory Background Regarding FCRA Claims.**

16. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA in 1970 to ensure the "confidentiality, accuracy, relevancy, and proper utilization" of credit reports. 15 U.S.C. § 1681(b). This section imposes a high, and often disregarded, standard on consumer reporting agencies. *See, e.g., Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that "'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived.'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993)).

17. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including § 1681e(b), one of the cornerstone provisions of the FCRA. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires the CRAs like Trans Union to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b).

18. Trans Union is a consumer reporting agency and charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information it reports. Trans Union fell short of that duty here, as it reported adverse, outdated, and inaccurate information

related to Plaintiffs' accounts—that should have been deleted from Plaintiffs' credit files as required by the FCRA.

19. The Consumer Financial Protection Bureau has noted, "experience indicates that [consumer reporting agencies] lack incentives and under-invest in accuracy." Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

20. Statutes like the FCRA therefore provide consumers with the only mechanism by which they can force consumer reporting agencies like Trans Union to report accurate information about them.

**B.     Allegations Regarding the Class Claims for Violations of § 1681e(b)**

21. The loans at issue in this case arise from a scheme designed by a now defunct and bankrupt company, Pink Energy, to use deceptive sales practices to defraud thousands of consumers into signing scam loans to pay tens of thousands of dollars each in connection with their supposed purchase of functional rooftop solar systems.

22. After many lawsuits were filed against Pink Energy, including by at least one Attorney General, and when it was under investigation of many more Attorneys General, it declared bankruptcy.

23. In the interim, thousands of consumers like Plaintiffs have become the financial victims of Pink Energy's unlawful and deceptive sales practices, now being on the hook for tens of thousands of dollars in loans for a rooftop solar panel system that was either never installed, never properly installed, or is otherwise faulty, overpriced with a hidden fee.

24. The problem though was not that the Plaintiffs and similar consumers purchased defective products, but rather that they were victimized by a connected scheme between five

lending partners and Pink Energy to attempt to separate the fraud from the loan instruments, with these Pink Energy lending partners conspiring and working with Pink Energy to inflate the loans, mislead consumers as to the actual "price" (known by everyone but the consumer to be false) and to circumvent federal and state consumer lending protections.

25. When they discovered the interconnections between the lending partners and Pink Energy, the Virginia Attorney General and other Attorneys General notified each of these parties that the Pink Energy loans should be suspended and would not be lawfully enforced.

26. The letter from the state Attorneys General Plaintiffs provided to Trans Union placed Trans Union on notice that the loans were—at best highly questionable, and at worst a complete sham, and Trans Union should have maintained reasonable procedures to ensure that it did not include any information pertaining to these loans in Plaintiffs' or the class members' reports.

27. The Lending Partners received notice from the Attorneys General who wrote on behalf of their consumers - the putative class - to notify them that these Pink Energy accounts were disputed.

28. Indeed, the Plaintiffs disputed with Trans Union that these debts were owed whatsoever and the accounts should be deleted from their credit files. They attached to their disputes to Trans Union the link to the October 7, 2022 joint letter from the Attorneys General of Kentucky, North Carolina, Illinois, Indiana, Michigan, Pennsylvania, South Carolina, Tennessee and Virginia to the Pink Energy Partners in which the Attorneys General advised the Pink Energy Partners that Pink Energy was under investigation and/or litigation by them for suspected violations of their respective states' consumer protection laws as well as applicable federal statutes and regulations. The Attorneys General further demanded in their October 7, 2022 joint

letter that the Pink Energy Partners "suspend loan payment obligations and the accrual of interest thereon…" and "work with consumers who have been adversely affected by Pink's bankruptcy and its alleged unlawful business practices."[1] Although Trans Union could have deleted the accounts in response to these disputes—a concession of the accuracy of their disputes—it nonetheless continued to report the same inaccurate information regarding other consumers as evidence by the reports of other putative class members.

29. Despite the widely known and publicized statements for the aforementioned Attorneys General, Trans Union nonetheless chose to allow the Pink Energy Partners, such as Sunlight, to inaccurately report balances owed on these bogus loans which debts were not just disputed by consumers, but were backed by numerous state government officers.

30. This conduct violated the FCRA, which required Trans Union to use "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report related." 15 U.S.C. § 1681e(b).

C. **Allegations Regarding the Class Claims for Violations of § 1681c(f)**

31. The Compliance Condition Code ("CCC") field within a reported credit tradeline is the manner of reporting that CRAs like Trans Union instruct their furnisher subscribers to use to note an account as disputed.

32. There is no other manner of reporting an active account as disputed that can cause the adverse account to be suppressed in a consumer's credit score.

33. To comply with a different FCRA section, § 1681i(c), allows a consumer to add a "100-word statement" to a credit report. Trans Union will add such free text in a report generally,

---

[1] https://www.attorneygeneral.gov/wp-content/uploads/2022/11/Multistate-Letter-To-Solar-Lenders-signatures-attached-v.-2.pdf (last accessed: August 25, 2023).

but does not do so as to a specific credit account and within that credit account's tradeline. And it will not even add this notation unless the consumer uses specific exact words requesting it.

34. Further, Trans Union does not code a consumer's 100-word statement within a manner that allows it to be integrated within a consumer's credit score.

35. Because nearly all of Trans Union's subscribers who buy and use credit reports receive, decode and format Trans Union's credit reports in an electronic format, a freeform consumer statement is entirely useless and is ignored by every major lender in considering a consumer's credit application.

36. Nevertheless, Trans Union as a blanket and uniform policy does not allow its agents, employees and systems to add a missing CCC when it learns that the consumer disputes the furnisher's reporting.

37. In fact, since numerous courts – including this one - have held that the omission of certain CCC codes violates the FCRA, Trans Union has tried to redefine and change the instructions for using such required code to prevent the reporting of an account is in active dispute and to prevent its suppression from a consumer's credit score.

38. Indeed, the Fourth Circuit recently ruled:

> [I]f an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—(1) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.

*Guthrie v. PHH Mortgage Corporation,* No. 22-1248 (4th Cir. 2023).

39. The facts in this case illustrate this problem. While the FCRA requires the reporting of an accurate status of dispute in a credit account, furnishers such as Sunlight and other

Pink Energy Partners fail to use the CCC code for disputed account and Trans Union knowingly refuses to note such an account as disputed.

**D.    Plaintiffs' Experiences**

40.    Within the past two years, Trans Union allowed Sunlight to report adverse information about Plaintiffs Theodore.

41.    In particular, Trans Union allowed Sunlight to report that Plaintiffs were seriously past due on a loan serviced by Sunlight, including a past due amount of $64,864.

42.    Trans Union allowed Sunlight's reporting to be added to Plaintiffs' credit files, even though it knew or should have known that the debt was disputed as part of an ongoing investigation by several Attorneys General.

43.    Mr. and Mrs. Theodore disputed the Sunlight account with Trans Union in April 2023 via Certified Mail requesting that Trans Union delete the Sunlight account from their credit files.

44.    In response to Mr. and Mrs. Theodore's disputes, Trans Union failed to conduct a substantive investigation of her dispute. Instead, it relied entirely on Sunlight to investigate the dispute and once Sunlight verified the information it was already reporting, Trans Union took no additional steps to investigate or make sure that the information that Sunlight provided was actually correct.

45.    Additionally, Trans Union took no steps itself to permanently block credit reporting or delete the disputed tradeline from Plaintiffs' credit files.

46.    Furthermore, Trans Union did not take the minimal measure of including a notation or remark that the account was disputed by Mr. and Mrs. Theodore.

47. As a result, the inaccurate information regarding the Sunlight account remained on Mr. and Mrs. Theodore's credit files.

48. To be clear, this information should not have appeared in Mr. and Mrs. Theodore's credit reports after the Plaintiffs, who were backed by numerous Attorneys General, disputed the debt.

49. Because of this inaccurate reporting, Mr. and Mrs. Theodore would not be able to demonstrate the invalidity of this account to a creditor.

50. Both Mr. and Mrs. Theodore experienced significant credit harm as a result.

**E.  Trans Union's Violations Were Willful.**

51. Trans Union's reporting of the Pink Energy Partner accounts and processing of consumer disputes was willful and carried out in reckless disregard for the consumers' rights under the FCRA. Trans Union's conduct was willful because it was accomplished through intended procedures that prioritize its own profitability over accuracy.

52. In addition, the willful nature of Trans Union's FCRA violations can be established by, for example:

    a. The FCRA was enacted in 1970; Trans Union has had 53 years to become compliant;

    b. Trans Union is a large company with access to legal advice through its own general counsel's office and/or outside litigation counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

    c. Trans Union knew or had reason to know that its conduct was inconsistent with numerous Attorneys General's guidance, case law, and the plain language of the FCRA;

  d. Trans Union voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

  e. Trans Union's violations of the FCRA were repeated and systemic.

<b>CLAIMS FOR RELIEF</b>

<b>COUNT ONE:<br>
VIOLATION OF THE FCRA, 15 U.S.C. § 1681e(b)<br>
(Class Claim)</b>

53. Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

54. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class initially defined as:

> **1681e(b) Class:** All persons residing in the United States (1) for whom Trans Union furnished a consumer report; (2) on or after January 1, 2023; and (3) containing an account where the original creditor of the loan was one of the Pink Energy Partners.
>
> Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, any person employed by the Federal Judiciary, and all persons who have signed a written release of his or her claim.

55. Plaintiffs also allege a Subclass as follows:

> **1681e(b) Pink Energy Sub-Class:** All persons residing in the United States (1) for whom Trans Union furnished a consumer report; (2) on or after January 1, 2023; and (3) containing an account where the original creditor of the loan was one of the Pink Energy Partners; and (4) the account pertains to a consumer's purchase of products and/or equipment from Pink Energy.
>
> Excluded from the sub-class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, any person employed by the Federal Judiciary, and all persons who have signed a written release of his or her claim.

56. Plaintiffs are all members of the 1681e(b) Class and Sub-Class.

57. **<u>Numerosity.</u> FED. R. CIV. P. 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all their claims is impractical. The

class members' names and addresses are identifiable through Trans Union's internal business records, and they may be notified of the pendency of this action by published and/or mailed notice.

58. **Predominance of Common Questions of Law and Fact.** FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include (1) whether Trans Union's conduct violated § 1681e(b) by reporting information related to Pink Energy Partners' accounts after Trans Union's receipt of consumer disputes backed by numerous State Attorneys General; (2) whether Trans Union maintained reasonable procedures designed to avoid violations of § 1681e(b); (3) whether Trans Union's conduct was willful or negligent violation; and (4) the appropriate amount of damages to be awarded to each consumer.

59. **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiffs' claims are typical of the claims of each putative class member. Plaintiffs are entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiffs' claims are based on the same facts and legal theories as each of the class members' claims.

60. **Adequacy of Representation.** FED. R. CIV. P. 23(a)(4). Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiffs have retained counsel competent and experienced in such litigation and intends, with their counsel, to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the class members' interests. Neither Plaintiffs nor their counsel have any interest that might conflict with their vigorous pursuit of this action.

61. **Superiority.** FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action

is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Trans Union's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

62. As described above, Trans Union violated § 1681e(b) of the FCRA by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

63. Plaintiffs and each putative class member suffered real and actual harm and injury.

64. For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in Trans Union's files and reports.

65. In each instance, each class member's credit report contained derogatory information that Trans Union was legally obligated to remove or permanently block the reporting thereof.

66. Trans Union's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Trans Union liable under 15 U.S.C. § 1681o.

67. As a result of these FCRA violations, Trans Union is liable for statutory damages from $100.00 to $1,000.00 for Plaintiffs and each class member, punitive damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

**COUNT TWO:**
**VIOLATION OF THE FCRA, 15 U.S.C. § 1681c(f)**
**(Class Claim)**

68. Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

69. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class initially defined as:

> **1681c(f) Class:** All persons residing in the United States (1) for whom Trans Union furnished a consumer report to a third party; (2) within the two years prior to the filing of this action and during its pendency; and (3) containing an account where the original creditor of the loan was one of the Pink Energy Partners; (4) the account pertains to a consumer's purchase of products and/or equipment from Pink Energy; and (5) where the account information section of the consumer report for the Pink Energy Account[2] in which the Compliance Condition Code was blank or which consumer report did not include a written remark by the consumer that the debt was disputed.
>
> Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, any person employed by the Federal Judiciary, and all persons who have signed a written release of his or her claim.

70. Plaintiffs also allege a Subclass as follows:

> **1681c(f) Pink Energy Sub-Class:** All persons residing in the United States (1) for whom Trans Union furnished a consumer report; (2) on or after January 1, 2023; and (3) containing an account where the original creditor of the loan was one of the Pink Energy Partners; and (4) the account pertains to a consumer's purchase of products and/or equipment from Pink Energy.
>
> Excluded from the sub-class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, any person employed by the Federal Judiciary, and all persons who have signed a written release of his or her claim.

---

[2] The term **Pink Energy Account** refers to any consumer account originating or arising out of a consumer's purchase of products or services from Pink Energy.

71. Plaintiffs are all members of the 1681e(b) Class and Sub-Class.

72. **Numerosity.** FED. R. CIV. P. 23(a)(1). Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all their claims is impractical. The class members' names and addresses are identifiable through Trans Union's internal business records, and they may be notified of the pendency of this action by published and/or mailed notice.

**Predominance of Common Questions of Law and Fact.** FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. Without limitation, the total focus of the litigation will be Trans Union's uniform conduct and procedures, whether Trans Union's uniform procedures were reasonable and whether Trans Union acted willfully in its failure to implement procedures to ensure that its reporting was not obsolete. Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question.

73. **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiffs' claims are typical of the claims of each putative class member. Plaintiffs are entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiffs' claims are based on the same facts and legal theories as each of the class members' claims.

74. **Adequacy of Representation.** FED. R. CIV. P. 23(a)(4). Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiffs have retained counsel competent and experienced in such litigation and intends, with their counsel, to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the class members'

interests. Neither Plaintiffs nor their counsel have any interest that might conflict with their vigorous pursuit of this action.

75. **Superiority.** F̲E̲D̲.̲ ̲R̲.̲ ̲C̲I̲V̲.̲ ̲P̲.̲ ̲23(b)(3). Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Trans Union's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

76. Trans Union violated 15 U.S.C. § 1681c(f) as to Plaintiffs and each member of the class including in the credit reports of Plaintiffs and each member of the class in reporting a delinquent credit tradeline without a notation or remark that the debt was disputed.

77. In the alternative and if Defendant somehow shows that the Pink Energy Partners did not affirmatively report the tradelines of the Plaintiffs and Class members as disputed, Defendant was still obligated to report the dispute as it had actual knowledge of same.

78. Further, and also in the alternative, if Defendant somehow shows that the Pink Energy Partners did not affirmatively report the tradelines of the Plaintiffs and Class members as disputed, because Defendant had actual knowledge otherwise it should have known under §1681e(b) that these furnishers were not reliable.

79. As a result of Defendant's conduct, Plaintiff and the putative class members suffered particularized and concrete injuries, including damages to their reputations, reductions to their credit scores, and increased risks that they would be denied credit. *In re Helmes*, 336 B.R. 105 (Bankr. E.D. Va. 2005) (explaining "a credit report entry that reflects a past due account is treated differently by prospective creditors in evaluating credit applications than an entry that reflects a debt that" is no longer owed).

80. Trans Union's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Trans Union was negligent, entitling the Plaintiffs and each member of the class to recover under 15 U.S.C. § 1681o.

81. The Plaintiffs and each member of the class and subclass are entitled to recover statutory damages, punitive damages, costs, and attorney fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

82. Despite the notice and judicial, regulatory and public interest criticism, Defendants have refused to change their dispute investigation process because it would cost too much money to do so.

83. Defendant's procedures imposed on the Plaintiffs and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

**COUNT THREE:**
**VIOLATION OF THE FCRA, 15 U.S.C. § 1681i(a)**
**(Individual Claim)**

84. Plaintiffs made disputes to Trans Union during the two years preceding the filing of this action about the inaccurate reporting of the Sunlight account.

85. In each instance, Trans Union refused to conduct any meaningful or reasonable investigation and instead relied entirely on its parroting of its paying customer – Sunlight.

86. Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate.

87. Trans Union violated 15 U.S.C. § 1681i(a)(4) by its conduct which includes, but is not limited to, failing to review and consider all relevant information that it received with the Plaintiffs' disputes.

88. Further, not only did Trans Union not permanently block or delete the disputed Sunlight tradeline, but it also intentionally refused to note the account reporting as in dispute.

89. Trans Union thus violated 15 U.S.C. § 1681i(a)(5) by its conduct which includes, but is not limited to, failing to delete or modify any information that was the subject of the Plaintiffs' disputes and that was inaccurate or could not be verified.

90. The Plaintiffs have been prevented and deterred from securing credit that they should have otherwise qualified for due to the inaccurate information that Trans Union has continued to include within their files, directly and as well without reporting it as disputed.

91. As a result of Trans Union's conduct, actions, and inaction, the Plaintiffs suffered damages to include, but not limited to damage to their credit rating, increased costs and interest, aggravation, emotional stress, inconvenience, embarrassment, and frustration.

92. As a result of Trans Union's conduct, actions, and inaction, the Plaintiffs suffered actual damages.

93. Trans Union's violations were willful, pursuant to 15 U.S.C. § 1681n, or, in the alternative, negligent entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

94. As a result of Trans Union's violation of 15 U.S.C § 1681i(a), the Plaintiffs are

entitled to recover actual, statutory, and punitive damages, in addition to their costs and attorney fees.

**WHEREFORE**, the Plaintiffs request certification of the classes and the sub-classes pursuant to Fed. R. Civ. P. 23(b); demands judgment on liability finding that Defendant willfully, or in the alternative negligently, violated 15 U.S.C. §§ 1681e(b) 1681c(f) and 1681i(a); demands judgment for actual, statutory and punitive damages against the Defendant, for attorneys' fees and costs, for prejudgment and postjudgment at the legal rate, and such other relief the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED.**

October 25, 2023

Respectfully Submitted,
**WILSON THEODORE and**
**LASHANDA THEODORE**

By: */s/ Leonard A. Bennett*
Leonard A. Bennett, VSB #37523
Thomas Domonoske, VSB #35434
Mark C. Leffler, VSB #40712
Adam W. Short, VSB #98844
John Maravalli, VSB #99000
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Fax: (757) 930-3662
Email: tom@clalegal.com
Email: lenbennett@clalegal.com
Email: adam@clalegal.com
Email: john@clalegal.com

Kristi C. Kelly, VSB #72791
KELLY GUZZO, PLC

        3925 Chain Bridge Road, Suite 202
        Fairfax, VA 22030
        Telephone: (703) 424-7572
        Facsimile: (703) 591-0167
        Email: kkelly@kellyguzzo.com
        *Counsel for Plaintiffs*